**UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF COLORADO
DENVER DIVISION**

| | |
|---|---|
| **SAMUEL GILLISS AND STEPHANIE GILLISS** § § § *Plaintiffs* § § v. § § **AIRSTREAM, INC. AND AIRSTREAM OF COLORADO LLC** § § § *Defendants* | **CIVIL ACTION NO:** § § § § § § § § § § § § § § **JURY TRIAL REQUESTED** |

# COMPLAINT

## I. Parties

1. Plaintiffs, SAMUEL GILLISS and STEPHANIE GILLISS, are individuals that now and have been at all times citizens of the state of Colorado.

2. Defendant, AIRSTREAM, INC., hereinafter "AIRSTREAM," is a citizen of the state of Ohio with its principal place of business in the state of Ohio. AIRSTREAM is a warrantor of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

AIRSTREAM's agent for service of process is The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202.

3. Defendant, AIRSTREAM OF COLORADO LLC, hereinafter "AIRSTREAM OF COLORADO," is a limited liability company and a citizen of the state of Colorado with its principal place of business in the state of Colorado. AIRSTREAM OF COLORADO is the seller of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

1    AIRSTREAM OF COLORADO's agent for service of process is Eric R. Jonsen, 55 Eldorado Blvd, Suite 200, Broomfield, CO 80021.

## II. Jurisdiction

4. This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

## III. Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

6. All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

7. On April 9, 2024, Plaintiffs purchased a new 2024 AIRSTREAM 33FBQ bearing VIN: 1STVBYT20RJ571914, hereinafter "Subject RV," from AIRSTREAM OF COLORADO.

The Subject RV was purchased primarily for Plaintiffs' personal use. The purchase price was $186,487. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **Hughes v. Segal Enterprises, Inc.**, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); **Chariton Vet**

**Supply, Inc. v. Moberly Motors Co.**, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

### B. Implied Warranties

8. As a result of the sale of the Subject RV by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the Subject RV would pass without objection in the trade under the contract description; and that the Subject RV was fit for the ordinary purpose for which such Subject RV are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the Subject RV occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the Subject RV had, in fact, repaired the defects.

11. Plaintiffs' purchase of the Subject RV was accompanied by express warranties offered by the Defendants and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the Subject RV.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the Defendants' warranty booklet and owner's manual.

### D. Actionable Conduct

13. In fact, when delivered, the Subject RV was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following:

    **A.** **CONTROL PANEL FOR INVERTER NOT WORKING.**

    **B.** **BATTERY DEFECTS, NON-CONFORMITIES, AND CONDITIONS.**

    **C.** **AIRSTREAM DEALERSHIP EMPLOYEE BACKED A TRAILER INTO SUBJECT RV CAUSING DAMAGE TO REAR QUARTER PANEL AND AWNING ARM.**

    **D.** **WATER LEAK IN SHOWER.**

    **E.** **FRONT A/C NOT COOLING.**

    **F.** **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS.**

14. Since purchase, Plaintiffs have returned the Subject RV to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which the Defendants was given the opportunity to repair the Subject RV the more significant and dangerous conditions were not repaired. The Defendants failed to repair the Subject RV so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the Subject RV continues to this day to exhibit some or all of the non-conformities described herein.

15. The defects experienced by Plaintiffs with the Subject RV substantially impaired its use, value and safety.

16. Plaintiffs directly notified the Defendants of the defective conditions of the Subject RV.

# VI. Causes of Action

## COUNT 1: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

17. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

19. Defendants are a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

20. The Subject RV is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

21. The express warranties more fully described hereinabove pertaining to the Subject RV is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

22. The actions of Defendants in failing to tender the Subject RV to Plaintiffs free of defects and refusing to repair or replace the Subject RV tendered to Plaintiffs constitute a breach of the written and implied warranties covering the Subject RV and hence a violation of the Magnuson-Moss Warranty Act.

23. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

24. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $250,000 according to proof at trial.

25. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 2: BREACH OF EXPRESS WARRANTIES

26. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

27. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that the Subject RV was free of defects in materials and work quality at the time of delivery.

28. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs a Subject RV that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

29. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

30. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the Subject RV; costs of repairs; expenses associated with returning the Subject RV for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 3: BREACH OF IMPLIED WARRANTIES

31. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

32. The Defendants impliedly warranted that the Subject RV which it designed, manufactured, and sold, was merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

33. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants are unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the Subject RV had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

34. Because of the defects, the Subject RV is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

35. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the Subject RV; costs of repairs; expenses associated with returning the Subject RV for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 4: BREACH OF COLORADO LEMON LAW

36. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

37. Plaintiffs are a "consumer" as that term is defined by the Colorado lemon law because they purchased the subject vehicle and it is a motor vehicle normally used for personal, family, or household purposes. See C.R.S. § 42-10-101(1).

38. The subject vehicle is a "motor vehicle" as that term is defined by the Colorado lemon law because it is a self-propelled truck designed for travel on the public highways and does not carry more than ten persons, sold in this state. See id. at (2).

39. Defendants' warranty is a "warranty" as that term is defined by the Colorado lemon law because it is a written warranty so labeled. See id. at (3).

40. The problems experienced by Plaintiffs are "defects" required to be repaired by the Defendants on a timely basis pursuant to the Colorado lemon law. See C.R.S. §§ 42-10-102, 44-20-124.

41. The overall business days out of service for the defects above make the subject vehicle a presumptive lemon under the Colorado lemon law. See C.R.S. § 42-10-103(2)(a)(II).

42. Pursuant to C.R.S. § 42-10-103, Defendants' failure to timely cure the defects within the Colorado lemon law period entitles Plaintiffs to recover damages plus attorney fees and costs of this action.

43. The rights afforded by the Colorado lemon law are cumulative, meaning that it does not "limit the rights or remedies which are otherwise available to a consumer under other state law or any federal law." C.R.S. § 42-10-105.

44. This action is timely because it is brought within one year from the subject vehicle's original sale date. See C.R.S. § 42-10-107.

**COUNT 5:**

**(VIOLATION OF COLORADO UNIFORM COMMERCIAL CODE, C.R.S. §§ 4-2-601, 608 – REJECTION/REVOCATION OF ACCEPTANCE)**

45. Defendants' herein by reference each and every allegation set forth in the preceding paragraphs.

46. Plaintiffs notified Defendants of their rejection/revocation of acceptance of the subject vehicle in writing because the subject vehicle cannot be repaired properly.

47. Defendants have flatly refused to honor Plaintiffs' rejection/revocation of acceptance in violation of law and have failed to refund money paid for the subject vehicle.

48. Because of the complaint about mechanical defects, the subject vehicle did not conform to the warranties that accompanied the subject vehicle's sale.

49. Plaintiffs, exercising rights under the Uniform Commercial Code, C.R.S. §§ 4-2-601, 608, Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d), effectively and legally rejected and/or revoked acceptance of the subject vehicle.

50. Plaintiffs request declaratory relief that they effectively rejected and/or revoked acceptance of the subject vehicle.

**COUNT 1:**
**(Violation of Colorado Uniform Commercial Code, C.R.S. § 4-2-719 – Failure of Essential Purpose)**

51. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

52. When the Defendants sold the subject vehicle to Plaintiffs, it offered a warranty promising to repair or adjust any defects in materials and workmanship.

53. Defendants have been afforded ample opportunities to repair the complained of defects and has failed to remedy the same within a reasonable time.

54. Pursuant to C.R.S. § 4-2-719, if any exclusive or limited warranty fails in its essential purpose, Plaintiffs are entitled to recover damages, including incidental and consequential damages. See also *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736 (Colo. 1991).

55. In the civil context, courts recognize loss of use of an item as an injury for which damages are recoverable. *People v. Suttmiller*, 240 P.3d 504, 508 (Colo. App. 2010). When an item has been deprived from its owner, the owner may recover as damages the temporary loss of use of the item at least the replacement rental value of the item. Id. Plaintiffs, through their cancellation notice, demanded the return of amounts paid toward the purchase of the subject vehicle.

### VII. Economic and Actual Damages

56. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

   a. Out of pocket expenses, including but not limited to the money paid towards the note securing the Subject RV;

   b. Loss of use;

   c. Loss of the "benefit of the bargain";

   d. Diminished or reduced market value; and

   e. Costs of repairs.

### VIII. Request for Rescission

57. Plaintiffs seek a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

58. Plaintiffs revoke their acceptance of the subject vehicle for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs'

reasonable reliance on the false representations and warranties of the Defendants that the defects in the subject vehicle would be repaired. Accordingly, Plaintiffs seek a cancellation of the automobile purchase transaction and an order of the court restoring to them the money obtained by Defendantsas a result of the false representations and breaches of warranty set forth above. Plaintiffs also seek cancellation of the debt and now offers to return the automobile to Defendants. In this connection, Plaintiffs will provide Defendants a credit for the impaired use of the subject vehicle, for the time that Plaintiffs were able to use it.

## IX. Attorney Fees and Costs

59. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## X. Prayer

60. For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the Subject RV and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c. For incidental and consequential damages according to proof at trial;

   d. Out of pocket damages for expenditures related to any cost of repairs, deductibles, and towing charges.

   e. Any diminution in value of the Subject RV attributable to the defects;

   f. Past and future economic losses;

   g. Prejudgment and post-judgment interest;

   h. Damages for loss of use of Subject RV;

   i. Civil Penalties and/or Punitive damages;

   j. Damages for mental anguish;

   k. Attorney fees;

   l. Costs of suit, expert fees and litigation expenses; and

   m. All other relief this Honorable Court deems appropriate.

## XI. Demand for Jury Trial

61. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS